IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| AIX SPECIALITY INS. CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  3:16cv642-WKW |
| | ) | (WO) |
| H&W TANK TESTING, INC., BOBBY | ) | |
| SULLIVAN and ALLISON | ) | |
| SULLIVAN, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION AND ORDER OF THE MAGISTRATE JUDGE**

**INTRODUCTION**

This case involves an insurance coverage dispute between plaintiff AIX Specialty Insurance Company ("AIX") and defendants H&W Tank Testing, Inc. ("H&W"), and Bobby Sullivan and Allison Sullivan ("Sullivans"). AIX contends that under the Commercial General Liability Occurrence policy issued to H & W, it is under no duty to defend or indemnify H&W in connection with a lawsuit filed by the Sullivans in state court. AIX requests that this court enter a judgment

declaring that the Policy does not cover any of the claims asserted by
Bobby and Allison Sullivan against H&W in a lawsuit filed in the

Circuit Court of Chambers County, Alabama, entitled *Bobby Sullivan and Allison Sullivan v. H&W Tank Testing, Inc*., Civil Action No. 12-CV-2016-9000062.00 ("Underlying Suit"); that AIX has no duty under the Policy to defendant H&W against the Underlying Suit; and that AIX has no duty to indemnify H&W against the Underlying Suit.

*See* Doc. # 1 at 2, ¶ 6.

The court has jurisdiction of this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332.   On October 5, 2016, the parties filed a planning report pursuant to FED.R.CIV.P. 26(f) requesting a modified scheduling order based on the nature of this case.  *See* Doc. # 29.  Specifically, the parties agreed that no initial disclosures were necessary, no discovery was needed, and this matter should be resolved on motions for summary judgment. (*Id*. at ¶¶ 3, 4 & 5).  The parties waived their right to trial.  (*Id*. at ¶ 5).  Consequently, the case is now pending before the court on cross-motions for summary judgment.  *See* Docs. # 32 & 35.  The parties have filed responses in opposition to the opposing parties' motions for summary judgment, and the court heard oral argument on the cross motions for summary judgment on February 14, 2017. Also pending before the court are motions to strike filed by the plaintiff.  *See* Docs. # 44, 45 & 50.

The court has carefully reviewed the motions for summary judgment, and the

briefs and evidentiary material filed in support of and in opposition to the motions, and concludes that the plaintiff's motion for summary judgment should be GRANTED, the defendants' motion should be DENIED, and that judgment should be entered in favor of the plaintiff.

## STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

---

[1] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

3

identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party meets its evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in his favor. *Greenberg*, 498 F.3d at 1263.

## FACTS

This case arises out of an accident that occurred on March 11, 2016. Bobby Sullivan was hauling propane gas in a tanker truck on U. S. Highway 31 in Chambers County, Alabama when the truck experienced a mechanical failure or malfunction, causing Sullivan to lose control of the truck and crash. When he crashed, the tank carrying the propane was punctured, and the tanker exploded. Sullivan suffered catastrophic burn injuries.

Prior to the accident, AIX issued H&W a Commercial General Liability Occurrence Policy, policy number L1A A243396-02, which was in full force and effect when Sullivan was injured. (Doc. # 33, Ex. A). The policy covered H&W from March 1, 2016 to March 1, 2017. (Doc. # 33-1 at 2[2]). The Declaration page demonstrates that the policy offers "Commercial General Liability Coverage." (*Id.*) The Commercial General Liability coverage declaration provides a "General Aggregate Limit" of $1,000,000. (*Id.* at 5). The Forms and Endorsement Schedule specifically lists "CG 22 33 04 13 Exclusion - Testing or Consulting Errors and

---

[2] When citing to page number, the Court refers to the page created by the court's electronic case management filing system for easier reference.

Omissions." (*Id*. at 3).

Section 1(A) of the policy sets forth coverage for bodily injury and property damage liability. (*Id*. at 30).  The very first sentence of the Commercial General Liability Coverage states that "[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." (*Id*.)  While the policy contains a number of exclusions, the one at issue in this case is the Testing or Consulting Exclusion.  (*Id*. at 55).  The exclusion warns that "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY." (*Id*.)  The endorsement then modifies the coverage as follows:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>
> 1.    An error, omission, defect or deficiency in:
>
>    a.    Any test performed; or
>    b.    An evaluation, a consultation or advice given; by or on behalf of any insured;
>
> 2.    The reporting of or reliance upon any such test, evaluation, consultation, or advice; or
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage",

or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph 1., 2., or 3. (*Id.*)

On May 26, 2016, the Sullivans filed suit against H&W in the Circuit Court of Chambers County alleging negligence and wantonness claims arising from H&W's failure to properly inspect and test the propane tank.  *See* Doc. # 29, Ex. 2, Compl.  In their complaint, the Sullivans allege that H&W's testing and inspection of the propane tank was "improper, insufficient and ineffective."

## THE PARTIES' POSITIONS

AIX filed this declaratory judgment action on August 5, 2016 seeking a declaration that it is under no duty to defend and/or indemnify H&W in the underlying state court action because the insurance policy specifically excludes coverage for any claim arising out of "an error, omission, defect, or deficiency in [a]ny test performed or [a]n evaluation, a consultation or advice given" as well as any claim arising out of "[t]he reporting of or reliance upon any such test, evaluation, consultation or advise."  (Doc. # 33, Ex. A at 55).  According to AIX, all of the Sullivans' claims fall within the exclusion, and thus, it is entitled to judgment as a matter of law.

H &W, on the other hand, argues that the exclusion violates Alabama public policy because H&W was required by state law to obtain liability insurance to receive a permit to conduct its business.  In the alternative, H & W argues that if the exclusion is valid, it does not exclude coverage for the Sullivans' claims of negligent or wanton inspection which are distinct from their claims of negligent or wanton testing.

## DISCUSSION

### A.  Motion to Strike

Before addressing the motions for summary judgment, as an initial matter, the court addresses AIX's motions to strike certain information relied on by the defendants in opposition to the motion for summary judgment.  *See* Docs. # 44, 45 & 50.  AIX argues that the affidavits of Michelle Cannon, Robert Highfield and Kimberly Cantrell (docs. # 44, 45 & 50) contain statements that should be stricken because the statements do not meet the requirements of FED. R. CIV. P. 702(a), 801 and 1002-04 and are generally inadmissible.  AIX has not claimed that it is prejudiced by the filing of the affidavits in support of the defendants' motion for summary judgment.  Moreover, the court is capable of sifting through the affidavits

and considering only those portions which are admissible, based on the declarant's personal knowledge or are not being offered for the truth of the matter asserted. To the extent that the declaration contains information not based on personal knowledge, the court has not considered that material in resolving the motion for summary judgment. Accordingly, the plaintiff's motions to strike will be denied.

### B. Testing Exclusion

There is no dispute that H&W had insurance and a policy was in full force and effect at the time of the accident that forms the basis of the claims against it. Under Alabama law, AIX can write policies with narrow coverage. *Hill v. Campbell*, 804 So. 2d 1107, 1109-10 (Ala. Civ. App. 2001).

> This Court has held that insurance companies have the right to limit the coverage offered through the use of exclusions in the policies, provided that those exclusions do not violate a statute or public policy. *Ex parte O'Hare*, 432 So. 2d 1300 (Ala. 1983); *Bell v. Travelers Indem. Co. of America*, 355 So. 2d 335 (Ala. 1978); *Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co.*, 289 Ala. 719, 272 So. 2d 232 (1972). If an individual purchases a policy containing an unambiguous exclusion that does not violate a statute or public policy, courts will enforce the contract as written. *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala.1987).

*Hooper v. Allstate Ins. Co.*, 571 So. 2d 1001, 1002 (Ala. 1990). "[T]he insurer has the burden of proving that the exclusion is applicable." *Fleming v. Ala. Farm*

*Bureau Mut. Cas. Ins. Co.*, 310 So. 2d 200, 205 (Ala. 1975).

The parties submitted the affidavit of Robert Highfield, President and manager of H&W, and stipulated to its admissibility for the purpose of summary judgment (doc. # 29 at 1). In his affidavit, Highfield repeatedly acknowledges that H&W "was in the business of testing and inspecting tankers." (*Id*. at Ex. 1). "Testing involves confirming that the tanker is trustworthy to hold propane or any other substance to a stated amount of pressure." (*Id*.)  He then describes the process "to test the pressure of the tank," which includes inspecting the tank "to look for any leaks."  The reason for testing and inspection is to "confirm[] that the tanker is safe to the amount of pressure it was designed to carry." (*Id*.)  After pressure testing is complete, the tanker is visually inspected. (*Id*.)  It is only after "completion of the inspection and the testing, if the tanker has passed each, a retest decal is affixed to the tanker that clearly shows the tests and inspections performed and the date." (*Id*. at 1-2)  Highfield admits that if the tanker does not pass the inspection or testing, the decal is not affixed and the tanker "may not be used on public roads until repaired and certified by retesting." (*Id*.)  It is undisputed that the tanker at issue in this case was inspected by H&W on June 16, 2011 and H&W

affixed the retest decal on the tanker indicating that it had passed testing and inspection.  (*Id*. at 2).

In the underlying lawsuit, the Sullivans raise claims related to the "improper, insufficient and ineffective inspection and testing of the propane tanker."  (Doc. # 29, Ex. 2, Compl. at 2, ¶ ¶ 10-17, 19, 23, 31, & 33-34). The defendants concede that if the exclusion is not barred by public policy, the exclusion applies to the Sullivans' negligent testing claims. However, the defendants argue that while the policy excludes claims of negligent testing, there is an ambiguity in the policy about whether it covers negligent inspection which, therefore, must be construed against AIX rendering the exclusion inapplicable to negligent inspection.[3] The court disagrees.

In *Driggers Engineering Services, Inc. v. CNA Financial Corp.*, 113 F.Supp.3d 1224 (M.D. Fla. 2015), the court was confronted with a testing exclusion contained in a commercial general liability policy as applied to a roof flood test.  The

---

[3] If a provision in an insurance policy is found to be genuinely ambiguous, "policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer." *St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So.3d 804, 811 (Ala., 2016) (quoting *Crossett v. St. Louis Fire & Marine Ins. Co.*, 289 Ala. 598, 603, 269 So.2d 869, 873 (1972).

exclusion language was essentially identical to the exclusion language in the policy issued by AIX. The *Driggers* court canvassed the few cases which have interpreted the language of the testing exclusion, noting that some cases have found the language to be ambiguous. *Id.* at 1229-1231. However, the *Driggers* court found more persuasive the cases which determined the testing exclusion to be unambiguous. *Id.* at 1230-31.

> The Court concludes that the allegations in the Underlying Lawsuits fall within the Testing Exclusion. Based on the allegations in the Underlying Lawsuits, Driggers was hired specifically to perform the roof test on the condominium building. The only reasonable inference drawn from that allegation is that all inspections, monitoring, supervision, and other conduct it performed was in furtherance of that roof flood test. Therefore, the alleged conduct underlying the negligence claims arise directly or indirectly from the roof test, in that the alleged damage was caused by, originated from, had their origin in, grew out of, flowed from, were incident to or had a connection with the roof test.
>
> Driggers' argument to the contrary, that the inspection, monitoring, and supervision are distinct and separate, is unavailing. *See James River Ins. Co. v. Ground Down Engineering*, 540 F.3d 1270, 1275 (11th Cir.2008) (damages sought by injured party all related to the pollution clean-up, therefore placing the complaint squarely within the CGL policy's pollution exclusion) . . .

*Driggers*, 113 F.Supp.3d at 1232.

In the  instant case, H & K was hired to insure that the tanker was roadworthy and could continue in service.   Although the defendants argue that the terms inspection and testing have "distinctly different" meanings in the industry, the court must give the language of the policy "the same meaning 'that a person of ordinary intelligence would reasonably give it." *Auto-Owners Ins. Co. v. Am. Central Ins. Co.*, 739 So. 2d 1078, 1080 (Ala. 1999).   Highfield testified that H&W tested and inspected the tanker to ascertain whether the tanker met regulatory standards to haul propane gas.  As a result, H&W affixed a retest sticker indicating that the tanker met federal standards, and as a direct result, the tanker remained in service.   The court concludes that the exclusion applies to any injuries arising from tests, evaluations, consultations, advice or reporting of or reliance on such tests, evaluations, consultation or advice done in furtherance of determining whether the tanker should remain in service.   Based on the unambiguous language of the exclusion, the court concludes that the policy excludes coverage of the Sullivans' claims of negligent and/or wanton testing and inspections.  "When there is no ambiguity in an insurance policy, the courts must enforce the policy as written and cannot defeat express provisions, including exclusions." *Auto-Owners Ins. Co.*, 739 So. 2d at 1080 quoting

13

*St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992).

Moreover, under Alabama law, Highfield, on behalf of H&W Tank, had a duty to read the policy and its exclusions to insure that it met the company's needs. A plain reading of the policy demonstrates that the policy excluded coverage for testing, evaluations, and consultations and reliance on reports of any such testing, consultations or evaluations. Once H&W received the insurance policy, it is charged with knowledge of the language of the policy regarding the extent of the coverage and any exclusions contained therein.

The court now turns to the defendants' argument that AIX's exclusion violates Alabama law and public policy. Relying on ALA. CODE § 9-17-105(b)(6) and (d), the defendants argue that AIX cannot exclude coverage because the statute requires permit holders to have insurance coverage. ALA. CODE § 9-17-105(b) describes permits required to sell, distribute, store or transport liquefied petroleum gases in the state of Alabama. Section (b)(6) describes the permit held by H&W.

> (6) PERMIT C-2. Shall give the holder a right to engage in or continue the business of performing magnetic, hydrostatic, visual or X-ray inspections of liquefied petroleum gas storage containers, cargo tanks, motor fuel containers and cylinders. Before any person

14

> engages in or continues the business of performing magnetic,
> hydrostatic, visual, or X-ray inspection of liquefied petroleum gas
> storage containers, cargo tanks, motor fuel containers and cylinders in
> the State of Alabama and not being a holder of a Permit A or B-1 the
> person shall obtain a Class C-2 Permit and execute with the board the
> insurance herein required. . . .

ALA. CODE § 9-17-105(b)(6).  The statute further requires a permit applicant to

"provide the board with evidence of minimum insurance coverage by an insurance

company or companies licensed to do business in the state."  ALA. CODE § 9-17-

105(d).  It is undisputed that H&W was required to have a minimum of one million

dollars of insurance coverage to hold its permit.  *Id*.  Failure to provide proof of

appropriate insurance coverage would result in a permit either not being issued or

if involving an existing permit, the permit would automatically be canceled.

According to the defendants, the statutory regulatory scheme "makes clear that the

public policy of the State of Alabama and the reason for the statutes is because of

"the inherent nature of liquefied petroleum gas which could cause a danger to the

public or to a liquefied petroleum gas user . . ."  (Doc. #34,  Defs' Br. at 3).

Hanging their hat on this single clause, the defendants contend that it is against

Alabama's public policy for AIX to exclude coverage for testing and inspection

services.  The defendants' reliance is misplaced.  The statement is taken out of

15

context when considered with the remainder of the paragraph.

> Due to the inherent nature of liquefied petroleum gas which could cause a danger to the public or to a liquefied petroleum gas user, the board or the board administrator shall have the administrative authority to issue a written directive order requiring any person who violates any of the provisions of this article as amended from time to time or any rule or regulation promulgated by the board to discontinue the operation of any LP-gas business or LP-gas system immediately and prohibit such person from commencing operations until said violations have been corrected. . .

ALA. CODE § 9-17-108.

The statutory regulatory scheme is directed towards permit holders and operators of LP-gas businesses or systems. The statute grants the board or board administrator the power to enjoin operators from doing business. The scheme is not in any way directed towards insurers. Neither ALA. CODE § 9-17-105 nor § 9-17-108 imposes any duty on insurance companies. The burden is on H&W as the permit holder to secure the appropriate insurance coverage, and unfortunately, it appears that H&W failed to do so. That fact does not shift the burden to AIX as the insurer to assume responsibility for H&W's mistake. Consequently, the court concludes that the testing exclusion does not contravene Alabama's public policy, nor is it unconscionable. *See Hooper*, 571 So. 2d at 1003.

16

## IV.  CONCLUSION

Accordingly, for the reasons as stated, and for good cause, it is the

RECOMMENDATION of the Magistrate Judge as follows:

1.  That the plaintiff's motion for summary judgment (doc. # 32) be

GRANTED and the court declare that AIX is under no duty to defend or indemnify

the defendants;

2.  That the defendants' motion for summary judgment (doc. # 35) be

DENIED; and

3.  That judgment be entered in favor of the plaintiff.

It is further

ORDERED that the plaintiff's motions to strike (docs. # 44, 45 & 50) be and

are hereby DENIED.  Finally, it is

ORDERED that the parties shall file any objections to this Recommendation

on or before **October 26, 2017**.  A party must specifically identify the factual

findings and legal conclusions in the Recommendation to which objection is made;

frivolous, conclusive, or general objections will not be considered.  Failure to file

written objections to the Magistrate Judge's findings and recommendations in

accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 12th day of October, 2017.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

18