IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| AIX SPECIALTY INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:16-CV-642-WKW |
| | ) | [WO] |
| H&W TANK TESTING, INC., BOBBY SULLIVAN, and ALLISON SULLIVAN, | ) ) ) ) | |
| Defendants. | ) | |

# ORDER

This is an insurance coverage dispute. On March 11, 2016, Defendant Bobby Sullivan was driving a propane tanker truck when he lost control and crashed. The propane tank was punctured, caught fire, and exploded, causing Mr. Sullivan catastrophic burn injuries. Mr. Sullivan and his wife, Allison, sued Defendant H&W Tank Testing, Inc., in an Alabama state court, alleging that H&W was negligent in its testing and inspection of the propane tanker. H&W had insurance coverage through a commercial general liability ("CGL") policy with Plaintiff AIX Specialty Insurance Company. AIX denied coverage to H&W, invoking an exclusion in the policy for any bodily injury or property damage arising out of "[a]n error, omission, defect or deficiency in [a]ny test performed; or

[a]n evaluation, a consultation[,] or advice given[] by or on behalf of" H&W. AIX then brought this action seeking a declaratory judgment that its policy does not cover the Sullivans' claims against H&W in the underlying suit and that AIX has no obligation to defend or indemnify H&W in that suit. (Doc. # 1, at 5.)

Before the court is the Recommendation and Order of the Magistrate Judge. (Doc. # 57.) After briefing and oral argument on the parties' cross motions for summary judgment, the Magistrate Judge determined that (1) the Sullivans' claims fall within the insurance policy's testing exclusion, and (2) this exclusion does not violate Alabama law or public policy and is therefore enforceable. Accordingly, the Magistrate Judge recommends that judgment be entered in favor of AIX. The Sullivans object to the Magistrate Judge's second conclusion, but not the first. (Doc. # 58.) Upon an independent review of the record and a *de novo* determination of those issues to which the Sullivans object, the court finds that the Magistrate Judge's Recommendation is due to be adopted. *See* 28 U.S.C. § 636(b).

The Sullivans invoke the Alabama statutory scheme governing liquefied petroleum gas as establishing a public policy of "protect[ing] the public from the unique dangers of propane tanker explosions," and warn that "[i]f AIX is free to exclude the very coverage required by [Alabama law], then the Alabama citizens would lose the very protection mandated by the legislature." (Doc. # 58, at 3–4.)

As the Magistrate Judge pointed out, however, the problem with this argument is that the statutory provision at issue (1) regulates the individuals seeking permits to work with liquefied petroleum gas, not their insurance carriers, and (2) is silent on the requirement of the kind of coverage (or exclusion from coverage) here at issue. The relevant Code provision provides:

> An *applicant* for any of the 10 permits shall provide the board with evidence of minimum insurance coverage by an insurance company or companies licensed to do business in the state. . . . The minimum insurance requirements are as follows:
>
> (1) Commercial general liability insurance for all 10 permits:
>    a. One million dollars ($1,000,000)—each occurrence.
>    b. One million dollars ($1,000,000)—personal and advertising injury.
>    c. One million dollars ($1,000,000)—general aggregate.
>    d. One million dollars ($1,000,000)—products and completed operations aggregate.

Ala. Code § 9-17-105(d) (emphasis added). Thus, even if the CGL policy issued by AIX did not conform to the statutory requirements, it was H&W's responsibility to acquire correct coverage. The provision does not impose an affirmative obligation on AIX to provide it.

This is in contrast to the automobile coverage cases that the Sullivans cite. In *St. Paul Fire & Marine Insurance Co. v. Elliott*, 545 So. 2d 760 (Ala. 1989), for instance, the Alabama Supreme Court found that a city ordinance requiring an insurer to notify the city 30 days before cancelling coverage of a taxicab operator meant that the insurer would be liable for continued coverage if it failed to do so,

3

even if the insured himself was on notice that his coverage had lapsed. *Id.* at 762. The court found that the "purpose and intent of the ordinance . . . is to insure the citizens of Eutaw against tortious conduct of taxicab operators," and concluded that the ordinance meant what it said: that the *insurer*, not the taxicab operator, was responsible for notifying the city of the cancellation of a policy. *See id.* at 762. Notable is the fact that the insurance company even admitted this interpretation and was seeking relief from the court on equitable grounds of estoppel. *Id.*

*Hill v. Campbell*, 804 So. 2d 1107 (Ala. Civ. App. 2001), also cited by the Sullivans, is also not to the contrary. In *Hill*, a woman injured in a car crash caused by a drunk driver was awarded compensatory and punitive damages, but the driver's insurance company denied coverage of the punitive damage award because it was excluded from the policy. *Id.* at 1107–08. The Alabama Court of Civil Appeals held that this did not violate public policy because the Alabama Wrongful Death Act required coverage of punitive damage awards only in cases where death resulted—where no compensatory award could make the victim whole. *Id.* at 1110–11. The court then turned to the issue of whether the *woman's* own insurance company could deny her coverage of the punitive damage award under her underinsured motorist coverage policy, which was governed by the Alabama Underinsured/Uninsured Motorist Statute. The court noted that the purpose of the statute was to protect "those financially and ethically responsible

people who obtain automobile-liability insurance[] from injuries caused by those not so responsible," *id.* at 1111 (citation omitted), and that it did this by directly governing the issuance of insurance policies to insureds to require that policies cover the insured for "damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death," *id.* (quoting Ala. Code § 32-7-23(a)). The court concluded that, even though it "might agree with the majority of jurisdictions that an insurance company should not have to pay punitive damages for another's wrongful act under [underinsured motorist] coverage when the insured has been made whole through compensatory damages," the court was nevertheless "bound by the words used by the legislature" in the statute, which did not make such a distinction. *Id.* at 1116.

The lesson of both *Hill* and *Elliott* is that Alabama courts apply the statutory provisions as they are written, not as they would like them to be written. *See Hill*, 804 So. 2d at 1116 ("It is our job to say what the law is, not what it should be."); *see also Grimes v. Alfa Mut. Ins. Co.*, 227 So. 3d 475, 487 (Ala. 2017) ("This Court has held that insurance companies have the right to limit the coverage offered through the use of exclusions in their policies, provided that those exclusions do not violate a statute or public policy. If an individual purchases a policy containing an unambiguous exclusion that does not violate a statute or

public policy, courts will enforce the contract as written." (quoting *Hooper v. Allstate Ins. Co.*, 571 So. 2d 1001, 1002 (Ala. 1990) (citations omitted))).

In sum, H&W was required to procure a CGL policy so that it could apply for a permit. The CGL policy it purchased unambiguously excluded coverage for the unfortunate accident that harmed Mr. Sullivan. The statutory provision the Sullivans cite governs permit applicants, not insurance companies or insurance policies, and in any event it does not limit the exclusions that an insurance policy may contain.

Accordingly, it is ORDERED as follows:

1. AIX's motion for an extension of time to file a brief in opposition to Defendants' objection to the Magistrate Judge's Report and Recommendation (Doc. # 59) is GRANTED, and its brief in opposition (Doc. # 60) is DEEMED timely.

2. Defendant's objection (Doc. # 58) is OVERRULED.

3. The Recommendation of the Magistrate Judge (Doc. # 57) is ADOPTED.

4. Plaintiff AIX Specialty Insurance Company's motion for summary judgment (Doc. # 32) is GRANTED, and the court DECLARES that AIX is under no duty to defend or indemnity Defendants.

5. Defendants' motion for summary judgment (Doc. # 35) is DENIED.

6.  A final judgment will be entered separately.

DONE this 19th day of March, 2018.

                                            /s/ W. Keith Watkins
                                 CHIEF UNITED STATES DISTRICT JUDGE